UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLORIA DAMASUS<br><br>　　Plaintiff,<br><br>v.<br><br>MON YOUGH COMMUNITY SERVICES,<br><br>　　Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, Gloria Damasus, by and through her attorney, Christi Wallace, Esquire, and files this Complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this Complaint to recover damages under the Americans with Disabilities Act of 1990 ("ADA"), as amended 42 U.S.C. §§12101 et seq.

### II. Jurisdiction and Venue

2. This action arises under the ADA, 42 U.S.C. §§12101. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

3. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

### III. Parties

4. Plaintiff, Gloria Damasus ("Plaintiff"), is an adult individual residing at 453 Patton Street, Wilmerding, PA 15148.

5. Defendant, Mon Yough Community Services ("Defendant"), is a business at 500 Walnut Street, McKeesport, PA 15132.

## IV. Facts

6. In 2010, Plaintiff was diagnosed with Depression and Anxiety. Plaintiff takes anti-depressant medication.

7. Plaintiff became employed with Defendant on July 27, 2015 as a Service Coordinator.

8. As a Service Coordinator, Plaintiff's duties at Defendant included identifying resources and making referrals for clients for housing, food, and drug/alcohol rehabilitation centers; implementing strength-based service plans based on Recovery Principles for patients; identifying strategies for service coordination involvement in the recovery process; facilitating service planning meetings and providing follow-ups after meetings; and applying knowledge of theory-based clinical skills to support recovery.

9. In August 2016, Plaintiff had a discussion with Julie Kumf ("Ms. Kumf"), Plaintiff's supervisor, concerning Plaintiff's disabilities, including how her disabilities limit her during training exams and how anxious she gets.

10. Plaintiff completed a reasonable accommodation application around September 2016 because of her severe Anxiety and Depression.

11. The reasonable accommodation Plaintiff asked for included extra time for tasks in which there was a time limit, as well as if her hours could be adjusted to have her come in an hour or two late since her medication made mornings difficult.

12. Defendant did not grant the accommodations.

13. Plaintiff asked Ms. Kumf questions about necessary preparations for her training. Ms. Kumf replied she did not know and encouraged her to call the training center directly. Yet when Plaintiff did so, the training center complained to Ms. Kumf's Manager, Chris Dellefrow, that she should not be calling directly.

14. Ms. Kumf then reprimanded Plaintiff for calling the training center and wrote her up in September 2016 for what she perceived as "inappropriate conduct with training staff." Ms. Kumf also denied the fact she ever encouraged her to go directly to the center for information.

15. Ms. Kumf didn't stop the harassment at that point; it only intensified. Ms. Kumf would peak into Plaintiff's office when Plaintiff was with patients. This made Plaintiff nervous, anxious and undermined her in front of patients. Ms. Kumf did not repeat this behavior with anyone else.

16. On multiple occasions, Ms. Kumf would also call Plaintiff and interrupt her while she was working in the field. Once again, this made Plaintiff nervous, anxious and undermined her in front of patients. Ms. Kumf did not repeat this behavior with anyone else.

17. On January 20, 2016, Plaintiff was scheduled to meet with three clients in their homes. Ms. Kumf texted her that she wanted to meet for an issue.

18. Ms. Kumf's Manager, Jeff Long ("Mr. Long") called Plaintiff and insisted Plaintiff stop what she was doing and come back to the office. Plaintiff complied.

19. When Plaintiff arrived at the office, Mr. Long handed her a "write up" to sign, indicating that she had been insubordinate with her supervisor, such as not coming into the office. Plaintiff refused to sign the writ-up.

    a. Plaintiff tried to report Ms. Kumf's harassment and unfair treatment. Mr. Long shut her down.

      b.   Plaintiff began to cry and was sent home.

20.     On January 21, 2016, Plaintiff requested January 26, 2016 and January 27, 2016 off from Mr. Long.

21.     Mr. Long stated Plaintiff should not take two days off, but eight weeks off.

22.     Plaintiff complied because she felt that she had to. At this point, Plaintiff felt that she was being pushed out.

23.     While on leave, Plaintiff called the Human Resources Department in January of 2016 and spoke with Susan Riazzi about the status of her accommodation. They told her that they were working on it. Plaintiff had requested the accommodations in September 2016 and four months later they were still "working on it."

24.     On February 10, 2016, Plaintiff was cleared by her doctor to return to work on February 15, 2016.

25.     On February 11, 2016, Plaintiff called Mr. Long to ask if she could return to work. Plaintiff was told not to return because Defendant was investigating something about her. Plaintiff was not to return and to receive no pay until told otherwise. This was yet another form of harassment and retaliation. Plaintiff was forced to stay home without pay.

26.     On February 18, 2016, Plaintiff faxed her doctor note, clearing her for work, to Human Resources and Mr. Long.

27.     While still on her eight weeks off, Plaintiff received a letter dated February 22, 2016, stating her employment had been terminated due to falsifying agency documents. It later came to light the case Ms. Kumf said Plaintiff falsified was not Plaintiff's case, but rather another employee's case which was assigned to Plaintiff after the date of the alleged falsification.

28.     Defendant did not have a legitimate reason to fire Plaintiff.

29. Plaintiff was fired for her disability.

## V. Allegations

### COUNT I
### Disability Discrimination and Retaliation in violation of ADA

30. The preceding paragraphs are incorporated herein as if set forth at length.

31. The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual."

32. Plaintiff suffers from severe Anxiety and Depression, and therefore has a disability as defined under the ADA.

33. Defendant was aware of Plaintiff's disability when she was terminated, as Plaintiff had discussed it and had filled out a reasonable accommodation application.

34. Plaintiff was fully qualified to perform all aspects of her job. Plaintiff's doctor told her that she was fit to return to work on February 15, 2016.

35. Defendant engaged in discrimination in violation of the ADA in the following ways:

    a. Defendant failed to engage in the interactive process of accommodation.

        i. Defendant was fully aware of Plaintiff's disability and yet Defendant still refused to provide any accommodations to Plaintiff.

            1. Plaintiff completed a reasonable accommodation application around September 2015. However, Defendant did not grant the requested accommodations.

            2. Plaintiff called the Human Resources Department in January of 2016 and spoke with Susan Riazzi about the status of her

        accommodation. They told her that they were working on it almost four months later.

b. Plaintiff's accommodation was not burdensome or overly expensive. Defendant had no legitimate reason to deny it or take over four months to grant it.

c. Defendant retaliated against Plaintiff.

    i. Plaintiff requested an accommodation in September 2016.

    ii. After she requested the accommodation, she was given unjustified write-ups.

        1. Plaintiff asked her supervisor questions about necessary preparations for her training. Ms. Kumf replied she did not know and encouraged her to call the training center directly.

            a. Ms. Kumf then reprimanded Plaintiff for calling the training center and wrote her up in September 2016 for what she perceived as "inappropriate conduct with training staff."

    iii. After she requested the accommodation, Ms. Kumf singled Plaintiff out and harassed her.

        1. Ms. Kumf scrutinized her work on a daily basis.

        2. Ms. Kumf would peak into Plaintiff's office when Plaintiff was with patients. This made Plaintiff nervous, anxious and undermined her in front of patients. Ms. Kumf did not repeat this behavior with anyone else.

        3. On multiple occasions, Ms. Kumf would also call Plaintiff and interrupt her while she was working in the field. Once again, this

      made Plaintiff nervous, anxious and undermined her in front of patients. Ms. Kumf did not repeat this behavior with anyone else.

    4. On January 20, 2016, Plaintiff was scheduled to meet with three clients in their homes. Ms. Kumf texted her that she wanted to meet for an issue.

      a. When Plaintiff arrived at the office, Mr. Long handed her a "write up" to sign, indicating that she had been inconsistent with her supervisor, such as not coming into the office.

d. Plaintiff reported Ms. Kumf's discrimination but nothing was done.

e. Plaintiff was forced to take leave.

  i. On January 21, 2016, Plaintiff requested January 26, 2016 and January 27, 2016 off.

  ii. Mr. Long stated that Plaintiff should not take two days off, but eight weeks off.

f. Defendant refused to allow Plaintiff to return to work.

  i. On February 10, 2016, Plaintiff was cleared by her doctor to return to work on February 15, 2016.

  ii. On February 11, 2016, Plaintiff called Mr. Long to ask if she could return to work. Plaintiff was told not to return because Defendant was investigating something about her. Plaintiff was not to return and to receive no pay until told otherwise.

g. Plaintiff was forced to stay off work with no pay.

h. Defendant wrongfully terminated Plaintiff because of her disability.

53. Defendant's acts and omissions violated the ADA.

## Request for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendant for the following:

a. Loss of back wages;

b. Loss of front wages;

c. Additional compensatory and/or punitive damages;

d. Plaintiff's legal fees;

e. Pre-judgment and continuing interest;

f. Court costs; and

g. Other such relief as the Court may deem just and proper.

Respectfully submitted,

*Christi Wallace*

Christi Wallace, Esq.
Kraemer, Manes and Associates, LLC
U.S. Steel Tower, 48th Floor
600 Grant Street, Suite 4875
Pittsburgh, PA 15219